UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

SABRINA SCOTT-WOLF and
SELENA STEVENS, individually,

      Plaintiffs,

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINES,

      Defendant.

_____/

## **COMPLAINT**

COME NOW the Plaintiffs, SABRINA SCOTT-WOLF and SELENA STEVENS, individually, by and through their counsel and for a cause of action against Defendant, and state and allege as follows:

## **PARTIES**

1. Plaintiff, Sabrina Scott-Wolf is a condominium property manager in Toronto, Canada, is *sui juris*, and is a resident of Canada.

2. Plaintiff, Selena Stevens is a dog groomer and professional fitness competitor and instructor, is *sui juris,* and is a resident of Canada.

3. Defendant, Carnival Corporation d/b/a Carnival Cruise Lines (hereinafter "Defendant") is a corporation incorporated under the laws of Panama, having its principal place of business and foreign registry in Miami, Florida.

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over the above-captioned lawsuit pursuant to 28 U.S.C. § 1333(1) as the matter arises under admiralty and maritime law.

5.      This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, wherein the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign State.

6.      Complete diversity of citizenship exists because the Plaintiffs are citizens and residents of the Commonwealth of Canada and Defendant is a corporation incorporated under the laws of Panama, having its principal place of business and foreign registry in Miami, Florida.

7.      This Court has personal jurisdiction over Defendant because its principal place of business is in Miami, Florida.

8.      Venue of this matter is predicated upon the mandatory forum selection clause contained in the Guest Ticket Booklet which grants exclusive jurisdiction and venue in the U.S. District Court for the Southern District of Florida in Miami-Dade County.

9.      All pre-filing requirements and notices have been completed.

## FACTUAL ALLEGATIONS

10.      On October 20, 2018, Sabrina Wolf, Selena Stevens and friend and teacher Kati Hamilton, boarded the Carnival Ecstasy, one of the more elderly ships in the fleet (hereinafter "the vessel") as paying passengers, for a Five Night Bahamas Cruise (hereinafter "the voyage") originating in Charleston, South Carolina.

11.      Defendant promotes itself as "The Fun Ships" and actively encourages its passengers to "let their hair down" and to consume alcohol while on board. Up to thirty percent of Defendant's profits from cruises is derived from the sale of alcohol to passengers.

12.     At the time of the voyage commencing, Plaintiffs had pre-purchased bottles of alcohol as well as consumed other alcoholic drinks on board.

13.     On October 20, 2018, at approximately 6:45-7:00 p.m., Plaintiffs were in their cabin getting dressed for dinner having attended the muster drill.

14.     There was a knock at the cabin door. Sabrina looked out through the peep hole in the door and saw three male uniformed safety officers standing outside. Sabrina opened the door.

15.     Without a word as to the reason or purpose for them being there, the three men barged into the cabin. The first officer who entered the room stretched his arm across Sabrina's chest, pushing into her breasts and proceeded to push her backwards through the narrow hallway and into the main part of the small cabin, forcing her to walk backwards bumping into and tripping on furniture in the way.

16.     The other two officers joined in the charge and pushed Sabrina as they entered the cabin. Sabrina felt instantly terrorized.

17.     Once Sabrina was fully backed into the main part of the cabin, she was then physically pushed by one of the officers who was trying to get her out of the way of the desk/vanity where a bar had been set up for the women's in room beverages.

18.     There were now six people in a very tight space and the security officers were pushing and shoving the Plaintiffs. One of the officers reached for a sealed unopened bottle of Patron Tequila on the desk/vanity that had been purchased in advance through Carnival.

19.     Selena asked why they were taking that. Sabrina and Katie asked why the officers were in the cabin and what the problem was. They were completely ignored.

20.     Sabrina asked the officers to stop touching her but was ignored while the officers continued holding her with her back pressed into the desk and chair. Several officers had their arms outstretched and pressed firmly against Sabrina's breasts as she was being restrained. She kept asking the officers to let her go and asking why they were doing this. Not one officer said a word and the two men holding her pressed against the furniture would not let her go.

21.     Both Selena and Sabrina were now being touched, jostled, restrained and/or pushed around by the three safety officers, Sabrina by two officers and Selena by another stocky male officer.

22.     Two more male safety officers then entered the cabin and joined in physically manhandling, restraining and pushing the Plaintiffs around. At this point, there were a total of five of Defendant's safety officers in the cabin in a very tight space with the three women.

23.     One officer was engaged in a struggle with Selena over the aforementioned bottle of tequila while three other officers were physically holding Sabrina against the desk/vanity table. One of the men could not fit in the tight confines of the main cabin so he stayed in the narrow corridor near the bathroom door.

24.     Kati, who had been in a tight corner between the beds, came forward and in a loud voice demanded that the officers leave everyone alone and leave the cabin immediately. The officer who was struggling with Selena appeared startled by this and released his grip on the tequila bottle which caused Selena to forcefully fall backwards and strike her head on the metal bar of the top bunk bed. Note that Selena is 5'3" and weighs but 115 pounds.

25.     Once the injury occurred and the safety officers saw that Selena was obviously injured, the officers released Sabrina and they all exited the cabin, again without a word.

26.     Plaintiffs were left trembling and shocked over the outrageous acts and conduct that had occurred. They had no idea why this had happened and felt terrorized that five uniformed men had invaded their cabin and physically assaulted and battered them.

27.     After about an hour of crying and trying to understand what happened, they collected themselves, finished dressing, and proceeded to Guest Services to demand an explanation.

28.     Once at Guest Services, they reported the assault and attempted theft and asked why security had stormed the cabin and what were their names. Guest Services refused to speak with Plaintiffs unless they went into a small room but Plaintiffs were afraid to be in a confined space with any of the staff because of what had occurred and insisted on discussing the event in public.

29.     Guest Services refused and told them they had to return in the morning.

30.     Plaintiffs requested a change of cabins because they were fearful to stay in the same location at the back of the ship and there was mold from a leak on the window and the carpet was damp.  Defendant refused their request.

31.     As a consequence of not being informed by Defendant of any serious transgressions they might have caused, such as interfering with the other passengers enjoyment of the cruise or violating ship's rules or causing harm to Carnival, the excessive use of force caused the Plaintiffs to believe a robbery was the motive for the incursion assaulting and terrifying them.

32.     Plaintiffs reasonably believed they were imprisoned in their cabin and could not leave at that time and were placed in fear for their safety by the very employees of the cruise line whose job it was to act as a police or security force for passengers aboard Defendant's ship.

33.     The day after the incident, however--- a day at sea, October 21, 2018--- Plaintiffs received a letter of apology from the Guest Services Manager (Exhibit 1).  The letter of apology was intended to placate the Plaintiffs but receiving no explanation as to the reason for the officers' conduct, it had the opposite effect of causing the Plaintiffs to worry what Defendant was up to. As it turned out, their fears and concerns were justified.

34.     As of that moment, however, Plaintiffs remained unaware they had committed any conduct which would justify such a gross invasion of the Plaintiffs' privacy as well as their sense of security as passengers on a cruise ship in international waters headed to a foreign country. Plaintiffs did not know what to make of the apology because Carnival continued to refuse to provide any explanation of what had occurred.

35.     Selena suffered neck, shoulder, arm and other injuries and sought medical attention on board the vessel. Because of Defendant's refusal to tell Plaintiffs why they had stormed their cabin in the manner of a SWAT team assault they had only read about or saw on television, Selena suspected the ship's doctor of being part of a conspiracy and attempted to tape record the medical consultation which the doctor discovered and halted the recording. Selena sought medical treatment anyway because she was in pain from her injuries by safety officers' assault and battery.

36.     Although Plaintiffs made diligent inquiry from Guest Services on the cruise after this incident, they continued to receive no explanation from Carnival as to why the incursion occurred. Then, they were informed that Carnival had notified the police in Nassau and that the police would board the vessel once the ship reached port.

37.     Since they had received no explanation for what had happened and were now informed that the Bahamian police would be involved, Plaintiffs lived in fear that Carnival would have them thrown into prison in the Bahamas, since they were virtual prisoners on board.

38.     The following day, October 22, 2018, the vessel stopped at Carnival's private island.  The island offered no means of escape for the Plaintiffs.

39.     The following day, October 23, 2018, Defendant showed up again at Plaintiffs' cabin at approximately 7:00 a.m. with various ship personnel, (including one of the officers that had assaulted them) and several Nassau Police officers. The Chief of Security demanded that the Plaintiffs were to hand over their passports and pack immediately. They were given a form to sign acknowledging they were being disembarked in Nassau, the Bahamas for interfering with the safety and/or enjoyment of (unnamed) passengers' enjoyment of the cruise or violating (unspecified) ship's rules or causing (unspecified) harm to the ship. Plaintiffs refused to sign the acknowledgement. (Composite Exhibit 2)

40.     Plaintiffs feared handing over their passports and immediately called the Canadian Consulate who advised Plaintiffs not do so. Defendant had the Nassau Police escort them off the ship. Without explanation of any kind, Carnival inexplicably paid for Plaintiffs' air fare back to Charleston, SC, the port of origin. Defendant's ordinary business practice, when involuntarily disembarking passengers from its vessels, is not to buy their airline tickets back to the port of origin of the cruise.

## COUNT I
## NEGLIGENT SECURITY

41.     Plaintiffs reaver and reallege paragraphs 1-40 as if set forth herein

42.     Defendant owed Plaintiffs a duty to exercise ordinary reasonable care under the circumstance for their health, safety, well-being, and to provide them reasonably safe passage under the circumstances.

43.     Defendant had a duty to properly maintain and operate the Vessel, to act consistent with, and comply with, all regulations and laws pertaining to the operations of cruise ships.

44.     Defendant breached its duty to Plaintiffs by failing to have proper procedures for confronting passengers suspected of or accused of violating ship's rules, causing harm to Defendant or interfering with the safety/enjoyment of other passengers.

45.     As a direct and proximate result of Defendant's failure to follow reasonable security policies and procedures, Plaintiffs suffered physical injuries and emotional distress.

46.     At all times material, Plaintiffs used reasonable care for their own safety.

47.     The cause of Plaintiffs injuries was the direct and proximate result of the negligence of Defendant and its employees or agents, by and through their acts and/or omissions, in one or more of the following ways:

    a.     In failing to provide reasonably safe procedures to inspect a cabin or investigate passengers during their stay aboard the vessel;

    b.     In failing to reasonably implement and maintain proper policies and/or procedures by which to monitor the alcohol consumption of patrons; or monitor the condition of inebriated passengers;

    c.     In failing to hire and train employees and/or agents to identify and suspend the service of alcohol to passengers, monitor passengers' consumption of alcohol, monitor the condition of intoxicated passengers;

    d.     In failing to hire and train safety officers so they would not storm a passenger cabin unannounced and/or cause injury to passengers;

    e.     In failing to reasonably maintain and monitor security cameras on the vessel so as to allow and/or prevent intoxicated passengers from violating ship's rules, causing harm or interfering with the safety/enjoyment of other passengers (assuming one of the Plaintiffs were guilty of such conduct);.

48.     Plaintiffs' physical and emotional injuries are and were a direct, proximate and foreseeable result of Defendant's breaches as aforesaid.

49.     As a result, Plaintiffs have incurred pecuniary and non-pecuniary losses.

WHEREFORE, Plaintiffs pray for judgment against Defendant on their first cause of action, damages as allowed including but not limited to physical and mental pain and suffering,

loss of value and enjoyment of the cruise, past, present and/or future medical care, aggravation of known and/or unknown physical and/or psychological conditions. Selena has incurred past and future medical and psychological expense for treatment and a loss of past and future earnings and a loss of earning capacity, pain and suffering, the costs of this lawsuit, loss of enjoyment of the cruise and for such further relief as the Court deems just and equitable and demands trial by jury. Selena's physical and psychological injuries are permanent or continuing in nature and that she will continue to suffer such losses and impairments in the future.

Sabrina suffered a physical injury which is non-permanent and mental distress and emotional anguish which is permanent and/or continuing in nature and past and future medical expenses, an aggravation of known and/or unknown physical and/or psychological injuries.

Judgment is demanded from Defendant for damages, pre-judgment interest and costs.

## COUNT II
## ASSAULT AND BATTERY

50.     Plaintiffs incorporate paragraphs 1 through 40 of the Complaint as though fully set forth herein.

51.     Defendant, by and through its safety officers, assaulted and battered the Plaintiffs in the course of storming their passenger cabin.

52.     The touching was not permitted by Plaintiffs nor did Plaintiffs consent to the battery. Plaintiffs were placed in fear for their physical and emotional safety as a result of the actions of the Defendant as aforesaid.

53.     Plaintiffs suffered physical and emotional injury as a result.

WHEREFORE, Plaintiffs pray for judgment against Defendant on their second cause of action, damages as allowed including but not limited to physical and mental pain and suffering,

loss of value and enjoyment of the cruise, past, present and/or future medical care and punitive damages.

Selena has incurred past and future medical and psychological expense for treatment and a loss of past and future earnings and a loss of earning capacity, pain and suffering, the costs of this lawsuit, loss of enjoyment of the cruise, an aggravation of known and/or unknown physical conditions, a loss of enjoyment of her cruise and for such further relief as the Court deems just and equitable and demands trial by jury. Selena's physical and psychological injuries are permanent or continuing in nature and that she will continue to suffer such losses and impairments in the future.

Sabrina suffered a physical injury which in non-permanent and mental distress and emotional anguish which is permanent and/or continuing in nature and past and future medical expenses and a loss of the enjoyment of the cruise.

Judgment is demanded from Defendant for compensatory and punitive damages, pre-judgment interest and costs.

## <u>COUNT III</u>
## <u>NEGLIGENT HIRING AND TRAINING</u>

54.     Plaintiffs incorporate paragraphs 1 through 40 of the Complaint as though fully set forth herein.

55.     At all times material, Defendant owed Plaintiffs a duty of reasonable care in the circumstances.

56.     At all times material, it was foreseeable to Defendant, that passengers, like the Plaintiffs could be served or imbibe alcoholic beverages to the point of being inebriated where their conduct might impact other cruise passengers or such conduct might violate ship's rules.

57.     In fact, Defendant encourages passengers to "let their hair down" and imbibe alcohol while on the vessel deriving as much as 30% of its profit on each voyage from the sale of alcohol.

58.     At all times material, it was foreseeable to Defendant, that such conduct, if it existed, would require the attention of staff.

59.     At all times material, Defendant owed a duty to use reasonable care under the circumstance in the hiring, retention and/or training of all staff because no staff member ever notified Plaintiffs that their conduct was in violation of ship's rules or that their conduct was interfering with the safety/enjoyment of other passengers or was causing harm to Defendant.

60.     Defendant breached its duty of care with regard to the hiring, retention, and/or training of employees and agents, in one or more of the following ways:

    a.      In failing to hire and train personnel to identify passengers, monitor passengers' conduct and notify passengers of any violation of ship's rules or interference with the safety/enjoyment of other passengers;

    b.      In failing to hire and maintain sufficient deck personnel, wait staff, security officers, bartenders, and cabin stewards and supervisors to ensure the reasonable safety of passengers; and

    c.      In failing to hire and train personnel to take reasonable action to promptly notify passengers that their conduct was in violation of ship's rules or that they were interfering with the enjoyment/safety of other cruise passengers.

61   As a direct and proximate result of the negligence of the Defendant, in failing to hire, retain, and/or train competent employees and agents, Plaintiffs were caused to be assaulted and battered by safety officers and were disembarked prematurely from the vessel in a foreign country.

WHEREFORE, Plaintiffs pray for judgment against Defendant on their third cause of action, damages as allowed including but not limited to physical and mental pain and suffering, loss of value and enjoyment of the cruise, past, present and/or future medical care.

Selena has incurred past and future medical and psychological expense for treatment and a loss of past and future earnings and a loss of earning capacity, pain and suffering, the costs of this lawsuit, aggravation of known and/or unknown pre-existing conditions, loss of enjoyment of the cruise and for such further relief as the Court deems just and equitable and demands trial by jury.  Selena's physical and psychological injuries are permanent or continuing in nature and that she will continue to suffer such losses and impairments in the future.

Sabrina suffered a physical injury which is non-permanent and mental distress and emotional anguish which is permanent and/or continuing in nature and past and future. medical expenses, loss of earnings and earning capacity and a loss of the enjoyment of the cruise and an aggravation of known and/or unknown pre-existing conditions.

Judgment is demanded from Defendant for compensatory and punitive damages, pre-judgment interest and costs.

## <u>COUNT IV</u>
## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

61.   Plaintiffs reaver and reallege paragraphs 1 through 40 of the Complaint as though fully set forth herein.

62.   After Plaintiffs were assaulted and battered by Defendant's safety officers, Defendant intentionally and willfully embarked on a course of conduct designed and intended to terrorize the Plaintiffs and cause them to suffer severe emotional distress.

63.   Defendant's conduct caused the Plaintiffs to experience a Kafka-esque nightmare where they were intentionally placed in an environment of uncertainty, fear and captivity.

64.   Despite Plaintiffs' repeated entreaties to Guest Services for an explanation of what had caused the safety officers to storm their cabin, Defendant refused to provide any explanation.

65.     This caused Plaintiffs to fear for their safety. They contacted the Canadian Consulate for help.  Selena thought it was necessary to record the ship doctor's visit.

66.     Then. Defendant's Guest Services issued a written apology to Plaintiffs but still refused to tell them why the security had stormed their cabin and assaulted them which caused the Plaintiffs to be confused and fearful.

67.     Subsequent to receiving the written apology from Guest Services, Defendant informed the Plaintiffs that the Nassau police had been called and they would be turned over to the police when the ship arrived in Nassau. Plaintiffs then questioned why an apology had been issued if they were being turned over to the police but got no response. The apology was clearly a ruse and issuing such an apology while planning to call the police to eject the Plaintiffs from the ship demonstrates an exceptionally cruel and callous plot against the Plaintiffs.

68.     This made the Plaintiffs fear they would be thrown into prison in a foreign country. Defendant offered no explanation as to why the police from a foreign country had to be involved with them.

69.     Defendant's conduct was, at all times material, outrageous and went beyond all bounds of decency, is shocking, atrocious, and utterly intolerable in a civilized community.

70.     The Plaintiffs were left to spend the next few days feeling like they were virtual prisoners aboard Defendant's ship or on their private island which offered no means of escape. They made repeated calls to the Canadian Consulate for assistance. They were involuntarily disembarked on October 23, 2018 escorted by the Nassau police.

71.     As a direct and proximate result of Defendants' conduct and statements, the Plaintiffs have suffered severe emotional distress that has resulted in physical manifestations, such

as sickness, nausea, exhaustion, fatigue, headaches, depression, irritability, anxiety, post-traumatic stress, lack of sleep, poor sleep, and/or nightmares.

WHEREFORE, Plaintiffs pray for judgment against Defendant on their fourth cause of action for all general and special damages provided under the law, including punitive damages; prejudgment and post-judgment interest thereon at the highest legal rate, the costs of this lawsuit, for such further relief as the Court deems just and equitable.

Selena has incurred past and future medical and psychological expense for treatment and a loss of past and future earnings and a loss of earning capacity, pain and suffering, the costs of this lawsuit, aggravation of known and/or unknown pre-existing conditions, loss of enjoyment of the cruise and for such further relief as the Court deems just and equitable and demands trial by jury.  Selena's physical and psychological injuries are permanent or continuing in nature and that she will continue to suffer such losses and impairments in the future.

Sabrina suffered a physical injury which is non-permanent and mental distress and emotional anguish which is permanent and/or continuing in nature and past and future. medical expenses, loss of earnings and earning capacity and a loss of the enjoyment of the cruise and an aggravation of known and/or unknown pre-existing conditions.

Judgment is demanded from Defendant for compensatory and punitive damages, pre-judgment interest and costs.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

72.     Plaintiffs reaver and reallege paragraphs 1 through 40 of the Complaint as though fully set forth herein.

73. On or about the above referenced date, Defendant and/or its corporate officers, agents, servants, crewmembers, and/or employees negligently inflicted emotional distress on Plaintiffs:

    a.    barging into their cabin where Plaintiffs were assaulted and battered without explanation;

    b.    continuing the assault and battery of Plaintiffs in their cabin and the hallway despite their pleas to stop;

    c.    refusing to allow Plaintiffs to change their cabin, after repeated requests;

    d.    knowingly and intentionally using excessive force against Plaintiffs which caused them to suffer physical and psychological injuries; and/or

    e.    ejecting Plaintiffs from the Vessel without explanation.

74. Plaintiffs did not consent to the physical assault and battery by Defendant's crewmembers and were in fear for their safety and only submitted to Defendant's demands and orders because they believed they had no choice but to obey.

75. Plaintiffs sustained a physical impact and/or were otherwise placed in in immediate risk of harm as a result of the conduct described in the preceding paragraphs 74-75 by Defendant and/or its corporate officers, agents, servants, crewmembers, and/or employees.

76. Defendant and/or its corporate officers, agents, servants, crewmembers, and/or employees acts and/or omissions caused a painfully chilling effect, humiliation, embarrassment, fear, fright, and anxiety upon Plaintiffs for reasons unbeknownst to them to this very day.

77. As a direct and proximate result of the aforesaid acts and/or omissions by Defendant and/or its corporate officers, agents, servants, crewmembers, and/or employees, Plaintiffs experienced in the past, extreme anxiety, fear, fright, and embarrassment, mental and emotional anguish, loss of enjoyment of life, impairment and inconvenience in the normal pursuits and

pleasures of life. The distress alleged herein is the result of the physical injury caused by the negligence or fault of Defendant's crewmembers/agents.

78.     These injuries did not pre-exist the incident or, in the alternative, may have pre-existed the incident and thus may have been aggravated by the incident. These damages continue into the future and/or permanent.

WHEREFORE, Plaintiff demands judgment against Defendant for all of the aforesaid economic and non-economic damages and any and all other damages Plaintiffs may be entitled to, including but not limited to: punitive damages, taxable court costs, pre- and post-judgment interest and all other damages which the Court deems just and proper, pre-judgment interest thereon at the highest legal rate, the costs of this lawsuit, for such further relief as the Court deems just and equitable.

Selena has incurred past and future medical and psychological expense for treatment and a loss of past and future earnings and a loss of earning capacity, pain and suffering, the costs of this lawsuit, aggravation of known and/or unknown pre-existing conditions, loss of enjoyment of the cruise and for such further relief as the Court deems just and equitable and demands trial by jury.  Selena's physical and psychological injuries are permanent or continuing in nature and that she will continue to suffer such losses and impairments in the future.

Sabrina suffered a physical injury which is non-permanent and mental distress and emotional anguish which is permanent and/or continuing in nature and past and future. medical expenses, loss of earnings and earning capacity and a loss of the enjoyment of the cruise and an aggravation of known and/or unknown pre-existing conditions.

Judgment is demanded from Defendant for compensatory and punitive damages, pre-judgment interest and costs.

## COUNT VI
## FALSE IMPRISONMENT

79.     Plaintiffs reaver and reallege paragraphs 1-40 as if fully set forth herein.

80.     While the Defendant's safety officers were occupying Plaintiffs' cabin, Plaintiff's were restrained from leaving the cabin in order to escape the safety officers' assault and attempted theft of their property.

81.     Defendant's confinement of Plaintiffs in their cabin during this event was unlawful and without cause.

82.     Plaintiffs did not consent to this deprivation of their liberty.

83.     As a direct and proximate result of Defendants' conduct and statements, the Plaintiffs have suffered severe emotional distress that has resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, depression, irritability, anxiety, post-traumatic stress, lack of sleep, poor sleep, and/or nightmares.

WHEREFORE, Plaintiff demands judgment against Defendant for all of the aforesaid economic and non-economic damages and any and all other damages Plaintiffs may be entitled to, including but not limited to: punitive damages, taxable court costs, and all other damages which the Court deems just and proper, pre-judgment interest thereon at the highest legal rate, the costs of this lawsuit, for such further relief as the Court deems just and equitable.

Selena has incurred past and future medical and psychological expense for treatment and a loss of past and future earnings and a loss of earning capacity, pain and suffering, the costs of this lawsuit, aggravation of known and/or unknown pre-existing conditions, loss of enjoyment of the cruise and for such further relief as the Court deems just and equitable and demands trial by

jury.  Selena's physical and psychological injuries are permanent or continuing in nature and that she will continue to suffer such losses and impairments in the future.

Sabrina suffered a physical injury which is non-permanent and mental distress and emotional anguish which is permanent and/or continuing in nature and past and future. medical expenses, loss of earnings and earning capacity and a loss of the enjoyment of the cruise and an aggravation of known and/or unknown pre-existing conditions.

Judgment is demanded from Defendant for compensatory and punitive damages, pre-judgment interest and costs.

DATED this 16th day of October, 2019.

By: /s/ Paul M. Hoffman
FBN: 0279897
HOFFMAN LAW FIRM
2881 E. Oakland Park Blvd., Suite 307
Fort Lauderdale, FL 33036
Telephone: (954) 707-5040
Facsimile: (828) 743-0403
*Attorneys for Plaintiffs*

# Carnival

Sunday, October 21, 2018

SELENA STEVENS
KATI HAMILTON
SABRINA SCOTT WOLF
Stateroom : R211

Subject : Carnival Ecstasy  10/20/2018 4MKR27 R211

Greetings from Guest Services,

Thank you for choosing the Carnival Ecstasy for your cruise vacation.  We realize that in this competitive world you have several cruise lines to choose from.  We are glad you chose to spend your vacation with us.

Further to our conversation, I have enclosed your reference number below along with the contact details for Carnival Cruise Line in order for you to follow up upon your return home. We sincerely apologize for this incident and we understand you wish to follow up further, please contact the below Guest Care Department.

Carnival Cruise Line
Guest Care Department
E-mail: guestcare@carnival.com
1-800-Carnival
Reference # SISC-SB-EC-10202018-3

Should you require further assistance, please do not hesitate to contact our Guest Services desk located on the Empress deck7 or dial extension 7777.

Sincerely,

Romana Muskinja
Guest Services Manager
Carnival Ecstasy

Exhibit 1



Carnival Place · 3655 NW 87 Avenue · Miami, FL · 33178 2428 · t 305 599 2600 · carnival.com

# Carnival®

10/23/2018

Ms. Sabrina Scott Wolf
DOB: 02/16/1978
Address:
617 Rathburn Rd
Etobicoke, Ontario Canada
Zip- M9C3T5

RE:   Carnival Ecstasy– 10/20/2018 (Sailing)
        Booking No: 4MKR27

Dear Ms. Scott Wolf,

This letter will confirm your discussion with Carnival Cruise Line ("Carnival Ecstasy") personnel where you were informed that you will be disembarked from the vessel and not be permitted to sail onboard any Carnival Cruise Line vessel in the future. This decision was based on your actions on the current cruise, which were a violation of the ship rules, interfered with the safety and/or enjoyment of other guests on the ship or caused harm to Carnival. Your attempt to book a future cruise will result in cancellation and a possible loss of deposit monies.

Thank you for your cooperation in this matter.

Sincerely,

Leonardo Contarino
CAPTAIN
Carnival Ecstasy

_____           _____
MASTER                             GUEST

_____           _____
WITNESS       GSM                  WITNESS       CSO

*Composite Exhibit 2*

# Carnival

10/23/2018

Ms. Selena Stevens
DOB: 04/08/1978
Address:
962 Hedge Drive
Mississauga, Ontario Canada
Zip- L4Y1G1

RE:   Carnival Ecstasy– 10/20/2018 (Sailing)
        Booking No: 4MKR27

Dear Ms. Stevens,

This letter will confirm your discussion with Carnival Cruise Line ("Carnival Ecstasy") personnel where you were informed that you will be disembarked from the vessel and not be permitted to sail onboard any Carnival Cruise Line vessel in the future. This decision was based on your actions on the current cruise, which were a violation of the ship rules, interfered with the safety and/or enjoyment of other guests on the ship or caused harm to Carnival. Your attempt to book a future cruise will result in cancellation and a possible loss of deposit monies.

Thank you for your cooperation in this matter.

Sincerely,

Leonardo Contarino
CAPTAIN
Carnival Ecstasy

MASTER

WITNESS                     GSM

GUEST

WITNESS                     CISO